1   **SIDLEY AUSTIN LLP**
    **JEFFREY M. OLSON (SBN 104074)**
2   *jolson@sidley.com*
    **PAUL H. MEIER (SBN 115999)**
3   *pmeier@sidley.com*
    **SAMUEL N. TIU (SBN 216291)**
4   *stiu@sidley.com*
    **555 W. Fifth Street, Suite 4000**
5   **Los Angeles, California 90013**
    **(213) 896-6000 phone**
6   **(213) 896-6600 fax**

7   **Attorneys for Plaintiff**
    **CARDICA, INC.**
8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12  CARDICA, INC., a Delaware corporation,    )   Case No. 07-CV-02687 (SBA)
                                              )
13              Plaintiff,                    )   Assigned to: Hon. Saundra Brown Armstrong
                                              )
14       v.                                   )   **DOCUMENT SUBMITTED UNDER SEAL**
                                              )
15  INTEGRATED VASCULAR                       )   **PLAINTIFF CARDICA, INC.'S**
    INTERVENTIONAL TECHNOLOGIES, L.C.,  )   **OPPOSITION TO DEFENDANT IVIT'S**
16  a Utah limited liability company,         )   **MOTION TO DISMISS FOR LACK OF**
                                              )   **PERSONAL JURISDICTION**
17              Defendant.                     )
                                              )   **[REDACTED COPY]**
18                                            )
                                              )   Date:      February 12, 2008
19                                            )   Time:      1:00 p.m.
                                              )   Dep't:     Courtroom 3, Third Floor
20  ─────────────────────────────────────

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF ISSUE TO BE DECIDED .......................................................3

III.  STATEMENT OF FACTS ...................................................................................3

    **A.**  Dr. Blatter Founded IVIT To Exploit Technology In The '268 Patent. ........................3

    **B.**  History Of The '268 Patent And Prior Interference Proceedings With Cardica ..........4

    **C.**  Summary Of IVIT's Substantial And Ongoing Contacts With California....................5

IV.  LEGAL STANDARD ..........................................................................................7

V.  ARGUMENT.......................................................................................................8

    **A.**  The Forum Contacts Of Dr. Blatter And IVIT, LC Are Imputed To IVIT, Inc. ..........9

    **B.**  This Court Possesses Specific Personal Jurisdiction Under Federal Circuit Law. ......................................................................................................................11

        **1.**  Cardica has demonstrated a *prima facie* case that IVIT's activities were "purposefully directed" at California......................................................11

        **2.**  Cardica's claims "arise out of or relates to" IVIT's California contacts.........14

        **3.**  Exercising jurisdiction over IVIT is "reasonable and fair" because IVIT lacks a "compelling" case for declining jurisdiction. .............................15

    **C.**  Dismissal Is Not An Appropriate Remedy .................................................................17

VI.  CONCLUSION .................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akro Corp. v. Luker,*
  45 F.3d 1541 (Fed. Cir. 1995) ......................................................................................passim

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
  223 F.3d 1082 (9th Cir. 2000) ..................................................................................................8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
  21 F.3d 1558 (Fed. Cir. 1994) ......................................................................................15, 17

*Brand v. Miller,*
  487 F.3d 862 (Fed. Cir. 2007) ...............................................................................1, 13, 16

*Brown v. Barbacid,*
  436 F.3d 1376 (Fed. Cir. 2006) ...................................................................................13, 16

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985). ..............................................................................................................14

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,*
  297 F.3d 1343 (Fed. Cir. 2002) .....................................................................................8, 17

*Elecs. for Imaging, Inc. v. Coyle,*
  340 F.3d 1344 (Fed. Cir. 2003) ...................................................................................passim

*Genetic Implant Sys., Inc. v. Core-Vent Corp.,*
  123 F.3d 1455 (Fed. Cir. 1997) ..................................................................................11, 17

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
  284 F.3d 1114 (9th Cir. 2002) ..............................................................................................11

*Hartog v. Jots, Inc.,*
  2004 U.S. Dist. LEXIS 24267 (N.D. Cal. Jan. 9, 2004)............................................9, 10

*Inamed Corp. v. Kuzmak,*
  249 F.3d 1356 (Fed. Cir. 2001) .........................................................................2, 12, 15, 16

*Minn. Mining & Mfg. Co. v. Eco Chem.,*
  757 F.2d 1256 (Fed. Cir. 1985) .......................................................................................2, 10

*No Touch N. Am. v. Blue Coral, Inc.,*
  1997 U.S. Dist. LEXIS 16153 (C.D. Cal. May 30, 1997) .................................................10

*Quill Corp. v. North Dakota,*
  504 U.S. 298, 119 L.Ed.2d 91, 112 S.Ct. 1904 (1992)......................................................12

ii

LA1 1114176v.1

*Rees v. Mosaic Techns., Inc.*,
  742 F.2d 765 (3d Cir. 1984) ............................................................................................10

*Stewart v. Luedtke Eng'g Co.*,
  2006 U.S. Dist. LEXIS 17130 (N.D. Cal. Feb. 10, 2006) ..............................................18

*Stickel v. Harris*,
  196 Cal. App. 3d 575 (1987) ...........................................................................................10

*Viam Corp. v. Iowa Export-Import Trading Co.*,
  84 F.3d 424 (Fed. Cir. 1996) ....................................................................................15, 18

Statutes

28 U.S.C. § 1406 ...................................................................................................................16

35 U.S.C. § 102(g) ..................................................................................................................1

35 U.S.C. § 135 .......................................................................................................................4

35 U.S.C. § 291 ...................................................................................................................1, 4

37 C.F.R. §§ 41.200-208 .........................................................................................................4

Cal. Civ. Code § 3521 ...........................................................................................................10

Utah Code Ann. § 48-2c-1410 (2007) .....................................................................................9

**CARDICA'S OPPOSITION TO MOTION TO DISMISS**
**CASE NO. 07-CV-02687 (SBA)**

LA1 1114176v.1

## I.     INTRODUCTION

Plaintiff, Cardica, Inc., owns several United States patents, including Patent Nos. 6,391,038 (the "'038 Patent") and 7,063,712 (the "'712 patent").[1]  Subsequent to the issuance of these two patents, defendant, Integrated Vascular Interventional Technologies, L.C. ("IVIT"), obtained U.S. Patent No. 7,220,268 (the "'268 patent").[2]  Cardica's complaint alleges, *inter alia*, that "[t]he '268 patent includes or potentially includes claims with interfering and invalid subject matter in view of the '038 patent and/or '712 patent...."  Compl. ¶ 21.  Therefore, "Cardica seeks a ruling pursuant to 35 U.S.C. § 291 that the claims within the '268 patent that interfere with claims in the '038 patent and/or '712 patent are invalid."  *Id.* ¶ 33.[3]

A patent interference action is about priority – who first conceived of a common invention in the interfering patents and exercised reasonable diligence to reduce that invention to practice.  *See Brand v. Miller*, 487 F.3d 862, 869 (Fed. Cir. 2007); 35 U.S.C. § 102(g).  In this case, both parties contend that their respective patented-inventions for anastomosis devices were conceived in California.  Compl. ¶ 10; Declaration of Duane D. Blatter ("Blatter Decl.") ¶¶ 4-5.  Indeed, IVIT claims to have commenced its "diligence" to reduce its invention to practice when Dr. Blatter was in California.  Declaration of Samuel Tiu ("Tiu Decl.") Ex. A.  Moreover, IVIT has directed legal efforts against Cardica, a California corporation, by repeatedly seeking to have the United States Patent & Trademark Office ("USTPO") declare interferences between the patents of Cardica and the patent applications of IVIT.  Tiu Decl. Exs. Q, R, S; *see Inamed Corp. v. Kuzmak*, 249 F.3d 1356,

---

[1] The '038 patent was filed on July 28, 1999.  A divisional application from the '038 patent having the same disclosure was filed on April 27, 2001, and is now U.S. Patent No. 6,478,804 (the "'804 patent).  A continuation application from the '804 patent having the same disclosure was filed on September 24, 2002, and is now the '712 patent.

[2] Defendant's motion refers to IVIT, Inc. and IVIT, LC collectively as IVIT.  Except where necessary for clarity, Cardica adopts the same convention for this opposition.

[3] Section 291 provides, *inter alia*,

> The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of validity of any of the interfering patents, in whole or in part.

Accordingly, Cardica seeks that the Court invalidate any claims of the '268 patent that interfere with Cardica's patents, and any claims that otherwise fail to meet the requirements of the patent statutes.

1

LA1 1114176v.1

1   1360 (Fed. Cir. 2001) (letter sent to New York attorney, but asserting infringement against a

2   California corporation, deemed purposefully directed at California).

3        Further, limited jurisdictional discovery has also revealed other substantial and continuing

4   contacts by IVIT with persons in California, including ███████████████████████████████████

5   ████████████████████████████████████████████.   *See infra* § II.C.3-5.

6   Cardica's interference and invalidity claims thus arise from or relate to IVIT's substantial

7   connections with California, and the Court should exercise specific personal jurisdiction over IVIT

8   based on those connections.

9        IVIT argues, of course, that specific personal jurisdiction does not exist.  Its first argument is

10  that the purported conception of  the '268 patent by Dr. Blatter in California is irrelevant because

11  that occurred a few months before Dr. Blatter founded IVIT.  Mot. pp. 5-6.  For purposes of personal

12  jurisdiction, all of the contacts of IVIT's predecessors, employees, agents, managers, founders, and

13  promoters are imputed to IVIT.  *See, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1546 & n.6 (Fed. Cir.

14  1995) (deeming acts of agent the acts of the principal for purposes of personal jurisdiction); *see infra*

15  § V.A.  This principle holds particularly true as to Dr. Blatter because he founded IVIT to ████████

16  ███████████████████████████████████████  has managed and exercised day-to-day

17  control over IVIT.  Blatter Decl. ¶ 7; Tiu Decl. Ex. C (Blatter Dep. 43:11-44:3, 46:4-15).  Otherwise,

18  defendants could avoid being haled into court for forum-related activities merely by transferring

19  assets "from one shell corporation to another . . . ."  *See Minn. Mining & Mfg. Co. v. Eco Chem.*, 757

20  F.2d 1256, 1263 (Fed. Cir. 1985).

21       IVIT's second argument fares no better.  IVIT asserts that the "sole contact" supporting

22  personal jurisdiction – conception of the '268 patent in California – is inadequate.  However, in

23  addition to conceiving the '268 patent in California *and* initiating interference proceedings directed

24  at Cardica, IVIT has substantial other connections with California that make the exercise of specific

25  personal jurisdiction over IVIT presumptively reasonable.  For example, IVIT represented to the

26  USPTO that Dr. Blatter commenced his exercise of "diligence" to reduce his invention to practice in

27  California.  Tiu Decl. Ex. A.  IVIT has also initiated ████████████████████████████████████████

28

2

LA1 1114176v.1

1  California entities ███████████████████████████████████t and indeed has

2  sent█████████████████████████████████████████████████. It has also

3  entered into███████████████████████████ These contacts constitute strong

4  evidence that IVIT's activities were "purposefully directed" at California and "arise out of or are

5  related to" Cardica's request that the '268 patent be declared interfering and invalid. *See infra*

6  § V.B.1-2.  Consequently, this Court possesses more than a *prima facie* basis to exercise specific

7  personal jurisdiction over IVIT and therefore should deny IVIT's motion to dismiss.

8  **II.    STATEMENT OF ISSUE TO BE DECIDED**

9  Whether the Court possesses a *prima facie* basis to exercise specific personal jurisdiction

10  over IVIT based on IVIT's contacts with California and its residents.

11  **III.    STATEMENT OF FACTS**

12  **A.    Dr. Blatter Founded IVIT To Exploit Technology In The '268 Patent.**

13  Dr. Blatter is the named inventor of the '268 patent. *See* Compl. Ex. A p. 1.  Dr. Blatter

14  founded IVIT, LC in 1998 ███████████████████████, which he

15  purportedly conceived earlier that year in San Francisco, California.  Tiu Decl. Ex. C (Blatter Dep.

16  6:17-20, 50:8-24); Blatter Decl. ¶¶ 4-5.  Dr. Blatter was ██████████████████of

17  ███████ *See* Tiu Decl. Ex. C (Blatter Dep. 43:10-12).  He served as its███████████,

18  exercised "primary responsibility for the day-to-day running of" the business, ███████

19  ███████████████████████████s. *See id* at 43:12-44:3.; *see also*

20  Blatter Decl. ¶ 7 ("I was involved in the day-to-day activities of IVIT, LC").

21  In 2006, Dr. Blatter formed IVIT, Inc. and merged IVIT, LC into IVIT, Inc.  Tiu Decl. Ex. C

22  (Blatter Dep. 7:15-18); Blatter Decl. ¶¶ 17-18.  ████████████████████e

23  ███████ Tiu Decl. Ex. C (Blatter Dep. 54:14-16).  Dr. Blatter has continued to maintain an active

24  role in IVIT, Inc. as its president.  Tiu Decl. Ex. C (Blatter Dep. 46:4-15); Blatter Decl. ¶ 17.  IVIT,

25  Inc. █████████████████████████████gy

26  ███████ Tiu Decl. Ex. C (Blatter Dep. 6:17-20, 14:13-17, 49:8-9, 50:8-24).

27

28

3

LA1 1114176v.1

**B.    History Of The '268 Patent And Prior Interference Proceedings With Cardica**

The '268 patent issued in May 2007. *See* Compl. Ex. A, p. 1. Dr. Blatter is listed as the inventor, and IVIT, LC is listed as the assignee. *Id.* On its face, the '268 patent claims to be a continuation of an earlier patent application, U.S. Patent Application Serial No. 10/243,543 ("the '543 application"). *Id.* at ¶ 12. Like the '268 patent, Dr. Blatter is the sole named inventor of the '543 application, and IVIT, LC is listed as the assignee. *Id.*

Prior to the present action, IVIT's '543 application and Cardica's '038 patent were the subject of a patent interference proceeding before the Board of Appeals and Interferences of the USPTO. Compl. ¶ 14.[4] In that interference proceeding, Dr. Blatter claimed to have invented the subject matter of the '543 application in San Francisco, California on March 2, 1998. Compl. ¶ 18; Tiu Decl. Exs. A-B. Dr. Blatter pointed to a drawing he made in San Francisco as the "earliest corroborated conception of" the subject matter of the '543 application. *Id.* He also claimed to have engaged in "diligence" to reduce the subject matter of the '543 application to practice the very same day he made his drawing in San Francisco. *Id.*

Significantly, it was IVIT that initiated the interference proceeding before the USPTO and specifically against Cardica, a California corporation. Tiu Decl., Ex. Q at 6 and Ex. R. However, the USPTO rejected IVIT's claim of priority and awarded priority of the subject matter to Cardica. Compl. ¶ 19. The USPTO also ordered that IVIT was not entitled to a patent containing the interfering claim. *Id.* IVIT did not appeal this decision. *Id.* Rather, IVIT obtained the allowance of a continuation application, and it was incumbent on Cardica to bring this lawsuit.[5]

As a continuation of the '543 application, the '268 patent shares the same written description and subject matter as the '543 application. Compl. ¶ 18. Not surprisingly, IVIT now claims in this

---

[4] An interference proceeding before the USPTO is an administrative proceeding to determine "the question of priority of invention when more than one applicant seeks a patent on substantially the same invention." 3A Donald S. Chisum, Chisum on Patents § 10.09[1][a] (2005); 35 U.S.C. § 135; 37 C.F.R. §§ 41.200-208. However, when two *issued* patents are interfering, then an interference action is brought before a United States District Court, rather than the USPTO. *See* 35 U.S.C. § 291.

[5] During the prosecution of IVIT's '268 patent, IVIT also sought to have an interference declared against Cardica's '804 patent. Tiu Decl., Ex. S.

**CARDICA'S OPPOSITION TO MOTION TO DISMISS**
**CASE NO. 07-CV-02687 (SBA)**

LA1 1114176v.1

1  litigation that Dr. Blatter "conceived of the subject matter that was ultimately incorporated in the

2  '268 patent" at the same time that he conceived of the subject matter of the '543 application and

3  ████████████████████████████████████ Blatter Decl. ¶¶ 4-5; Tiu Decl. Ex. C

4  (Blatter Dep. 51:7-25).  Recognizing that IVIT would make such a claim, Cardica filed this patent

5  interference action the same day the '268 patent issued seeking a ruling that "the claims within the

6  '268 patent that interfere with claims in the '038 patent and/or '712 patent are invalid" and that the

7  '268 patent is otherwise invalid for failing to meet the requirements of the patent statute.  Compl. ¶¶

8  33-34.

9      **C.**    **Summary Of IVIT's Substantial And Ongoing Contacts With California**

10      IVIT's relevant California contacts fall into four broad categories:  (1) initiating interference

11  proceedings before the USPTO; (2) purported conception and development of the '268 patent in

12  California; (3)████████████████████████████████████████████████;

13  (4)██████████████████████; and (5)███████████████ia.

14      *1.*    *Initiating Interference Proceedings Before the USPTO*:  IVIT has repeatedly sought

15  to initiate interference proceedings before the USPTO against Cardica, and thereby attempted to

16  invalidate Cardica's patents.

17      *2.*    *Conception and development of the '268 patent*:  According to IVIT, Dr. Blatter

18  conceived of the technology underlying the '268 patent on March 2, 1998 in San Francisco,

19  California.  Blatter Decl. ¶¶ 4-5.  As support for this claim, IVIT points to███████████er

20  ████████████████████████ Tiu Decl. Ex. C (Blatter Dep. 51:7-22).  IVIT

21  represented to the USPTO in the interference proceedings that Dr. Blatter also engaged in

22  "diligence" to reduce the technology to practice commencing that same day when Dr. Blatter was

23  purportedly conceiving the invention in California.  Tiu Decl. Exs. A-B (Priority Statements).

24  Indeed, IVIT initially represented to the USPTO that Dr. Blatter reduced the technology to *actual*

25  practice in July 1998 in San Francisco.  *Id* at Ex. A; *but see id.* at Ex. B (changing the location).

26      *2.*    ██████████████████████████████████  At various

27  times, IVIT has ██████████████████████████████████████████

28

**CARDICA'S OPPOSITION TO MOTION TO DISMISS**
**CASE NO. 07-CV-02687 (SBA)**

LA1 1114176v.1

1  ▮▮▮▮▮▮▮▮▮▮▮▮ For instance, Dr. Blatter, on behalf of IVIT, ▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮ in late 2000. Tiu Decl. Ex. C (Blatter Depo. 15:3-25). ▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮ a, and Dr. Blatter communicated ▮▮▮▮▮▮▮▮▮▮▮ in

4  California. *Id.*; Tiu Decl. Exs. D-F; http:/▮▮▮▮▮▮▮ Initially, Dr. Blatter inquired about

5  using ▮▮▮▮▮▮▮▮▮▮▮ t and using technology developed ▮▮▮▮ to assist

6  with tests of IVIT's ▮▮▮▮▮▮▮▮. Tiu Decl. Ex. C (Blatter Dep. 14:15-15:25). During

7  those conversations, Dr. Blatter also inquired whether ▮▮▮▮ would be interested in investing in

8  IVIT, LC. *Id.* at 15:3-25. To facilitate those discussions, Dr. Blatter executed confidentiality

9  agreements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tiu Decl. Ex. G. IVIT

10  then forwarded an approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ d

11  ▮▮▮▮▮▮▮▮▮▮ commercial value of the technology in the ▮▮▮▮ t. Tiu Decl. Ex. C (Blatter Dep.

12  16:24-17:5); *see also* Tiu Decl. Ex. H. Dr. Blatter subsequently contacted ▮▮▮▮ s to answer

13  questions about ▮▮▮▮▮▮▮. *Id.* at 17:11-19.

14  In ▮▮▮▮, Dr. Blatter also contacted ▮▮▮▮▮▮▮▮▮▮▮ up

15  ▮▮▮▮▮▮▮ based in Menlo Park, California, about investing in IVIT. Tiu Decl. Ex. C (Blatter

16  Dep. 20:4-23, 21:17-22:20), Ex. I.[6] Dr. Blatter and an IVIT engineer ▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮ n. *Id.* The ▮▮▮▮▮▮▮▮▮▮ d

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ f a

19  ▮▮▮▮▮▮▮▮▮▮▮. *Id.; see also* Tiu Decl. Ex. J. After ▮▮▮▮▮▮▮

20  ▮▮▮▮ on, Dr. Blatter followed-up ▮▮▮▮▮▮▮▮▮▮ T. *Id.* at

21  24:9-23.

22  In addition to ▮▮▮▮▮▮▮▮▮▮, Dr. Blatter contacted ▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮ California ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮. *See* Tiu Decl. Ex. C (Blatter Dep. 31:3-24, 33:6-14), Ex. K (listing potential investors); *see*

25  *also* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ m.

26

27  [6] ▮▮▮ has since been acquired by ▮▮▮▮▮▮▮▮

28

6

LAI 1114176v.1

1      *3.*    <u>Retaining consultants in California</u>: IVIT has retained the services of at least

2  ████████████████

3      (a)    In approximately ██████████ Dr. Blatter contacted ██████████ a California

4  resident, about ████████████████████████████████████████████████ce.

5  Tiu Decl. Ex. C (Blatter Dep. 13:15-14:8). In ██████████████████████████ng

6  ██████████████. Tiu Decl. Ex. L. The consulting agreement states on its face tha ████

7  lives in California and requires that any notices be sent to █████ in California. *Id.* at pp. 1-2.

8      (b)    In approximately ██████████, IVIT entered into a ████████████████ t

9  with ██████████. Tiu Decl. Ex. M. The agreement requires that any notices be sent ████

10  ████ at a California address. *Id.* at p. 2; *see also* Tiu Decl. Ex. C (Blatter Dep. 42:16-24)

11  (testifying that █████ maintained residences in California and Utah).

12      (c)    In ██████████ IVIT entered into a ████████████████ t with ████

13  ████ Tiu Decl. Ex. N. The consulting agreement states on its face tha ██████████ is "a California

14  corporation with its principal office" in California and requires that any notices be sent ████

15  █████ in California. *Id.* at pp. 1-2; *see also* Tiu Decl. Ex. O. In ██████████, an IVIT employee

16  visited ██████████ ffices in California regarding ████████████ Tiu Decl. Ex. P.

17      *4.*    <u>Tradeshows/training</u>: In ██████████ Dr. Blatter traveled to California for a

18  ████████████ e. Tiu Decl. Ex. C (Blatter Dep. 54:22-55:11). In ██████████, two

19  IVIT, Inc. employees also traveled to California to ████████████████████████ for

20  ████ *Id.* at 54:22-55:20.

21      **IV.    LEGAL STANDARD**

22      In patent cases, personal jurisdiction is governed by the law of the Federal Circuit. *Elecs. for*

23  *Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (holding District Court erred by

24  applying Ninth Circuit law on personal jurisdiction in patent case); *accord Deprenyl Animal Health,*

25  *Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347-48 (Fed. Cir. 2002) (applying

26  Federal Circuit law and reversing dismissal for lack of personal jurisdiction). Under Federal Circuit

27  law, where a defendant challenges personal jurisdiction based on "affidavits and other written

28

1   materials in the absence of an evidentiary hearing, a plaintiff need only . . . make a *prima facie*

2   showing" of personal jurisdiction. *Elecs. for Imaging*, 340 F.3d at 1349. The "district court must

3   accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual

4   conflicts in the affidavits in the plaintiff's favor. *Id.* (noting that the Ninth Circuit applies the same

5   standard, and citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir.

6   2000)).

7          Because California's long-arm statute extends to the limits of the due process clause, the

8   "personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports

9   with due process." *Elecs. for Imaging*, 340 F.3d at 1349-50. To determine whether an exercise of

10  specific personal jurisdiction comports with due process, the Federal Circuit looks to "whether

11  (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim

12  arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal

13  jurisdiction is reasonable and fair." *Id.* at 1350. While Cardica must make a *prima facie* showing on

14  the first two points, IVIT must demonstrate a "compelling case" for why an exercise of personal

15  jurisdiction would be constitutionally unreasonable. *Id.* at 1350, 1354.

16                              **V.    ARGUMENT**

17         Cardica respectfully submits that this Court can and should exercise specific jurisdiction over

18  IVIT. This is a patent interference action and, according to IVIT's own assertions, IVIT not only

19  conceived the "invention" of its interfering patent in California, it commenced its asserted

20  "diligence" to develop that technology when Dr. Blatter was "conceiving" the alleged invention in

21  California.    It has also ███████████████ from California entities and ███ employees ██

22  ███████████████ in California.    These and other "substantial," "significant," and

23  "continuing obligations" between IVIT and California make the exercise of specific personal

24  jurisdiction over IVIT presumptively reasonable. *Elecs. for Imaging*, 340 F.3d at 1350 (internal

25  quotations omitted).

26

27

28

A.    **The Forum Contacts Of Dr. Blatter And IVIT, LC Are Imputed To IVIT, Inc.**

Because conception and diligence are central to a patent interference action, IVIT first argues (without any supporting authority) that a gap of a few months between when Dr. Blatter allegedly conceived of the technology of the '268 patent, and when Dr. Blatter ███████████████████, renders those California contacts irrelevant for purposes of personal jurisdiction. Mot. pp. 5-6. That argument is wrong. The forum contacts of IVIT's predecessors – in this case IVIT, LC and Dr. Blatter – are imputed to IVIT, Inc. for purposes of personal jurisdiction. This Court thus can and should aggregate the contacts of Dr. Blatter, IVIT LC, and IVIT, Inc. for purposes of specific personal jurisdiction.

In general, forum contacts of a predecessor are imputed to a successor for purposes of personal jurisdiction where, as here, the successor could be liable under state law for the acts of the predecessor. *Hartog v. Jots, Inc.*, 2004 U.S. Dist. LEXIS 24267, at *11-12 (N.D. Cal. Jan. 9, 2004) (Armstrong). In this case, the forum contacts of IVIT LC must be imputed to IVIT, Inc. because IVIT, LC merged into IVIT, Inc. *See* Blatter Decl. ¶¶ 17-18. Under California or Utah law, as the surviving entity, IVIT, Inc. assumed liability for IVIT, LC's prior acts. *See* Utah Code Ann. § 48-2c-1410 (2007) (assigning "all obligations ... including, without limitation, contractual, tort, statutory, and administrative obligations [to] the surviving entity"); *Hartog*, 2004 U.S. Dist. LEXIS 24267, at *11-12 (ruling that, under California law, successors are liable where "the transaction amounts to a consolidation or merger" or the successor is a "mere continuation"); *cf. Minn. Mining & Mfg. Co.*, 757 F.2d at 1263-65 (rejecting notion that a transfer "from one shell corporation to another" can defeat jurisdiction).

For similar reasons, Dr. Blatter's California contacts must be attributed to IVIT, LC and IVIT, Inc. for purposes of specific personal jurisdiction. An entity that accepts benefits arising out of pre-formation activities of an agent should "anticipate being sued in the state . . . ." *See Rees v. Mosaic Techns., Inc.*, 742 F.2d 765, 768-69 (3d Cir. 1984) (exercising personal jurisdiction over corporate defendant based on pre-incorporation activities of agent); *Akro Corp.*, 45 F.3d at 1546 & n.6 (deeming acts of agent the acts of the principal for purposes of personal jurisdiction); *see also,*

9

1  *e.g.*, *Stickel v. Harris*, 196 Cal. App. 3d 575, 586 (1987) (applying settled principle that an entity

2  "ratifies" pre-formation conduct "by knowingly accepting its benefits").

3          This rule applies with particular force here because Dr. Blatter founded IVIT to ▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮t. Tiu Decl. Ex. C (Blatter Dep. 6:17-20, 14:13-17, 43:10-

5  44:3, 50:8-24). He also assigned all rights to that technology to IVIT (Compl. Ex. A p. 1), and IVIT

6  has sought to take advantage of Dr. Blatter's purported conception and diligence in California. Mot.

7  p. 7; Tiu Decl. Exs. A-B (Priority Statements); *No Touch N. Am. v. Blue Coral, Inc.*, 1997 U.S. Dist.

8  LEXIS 16153, *3 (C.D. Cal. May 30, 1997) (holding that defendant who accepted assignment

9  "stepped into the shoes" of the assignor, and the assignor's "acts are imputed to" the assignee for

10  purposes of personal jurisdiction); *see also* Cal. Civ. Code § 3521 ("He who takes the benefit must

11  bear the burden").

12          IVIT offers no relevant authority to support its sweeping argument that pre-formation

13  contacts merit no weight in a jurisdictional analysis. Mot. pp. 5-6. The one case IVIT cites for its

14  argument – *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir.

15  2002) – never addresses the weight given to such forum contacts.[7] Moreover, the Federal Circuit has

16  rejected similar attempts to draw arbitrary lines designed to render prior forum contacts irrelevant.

17  *See Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (exercising

18  personal jurisdiction based in part on contacts *predating* issuance of patent cited in cease and desist

19  letters that triggered patent litigation because "jurisdiction [was] at issue, not liability").

20          The Court thus can and should aggregate all of the forum contacts of IVIT, Inc., IVIT, LC,

21  and Dr. Blatter's that relate to the '268 patent to exercise specific personal jurisdiction.

22

23

24

---

25  [7] *Glencore* involves an action under the Federal Arbitration Act by a Dutch company to enforce a

26  foreign arbitration award issued in England against another foreign (Indian) company. *Id.* at 1118-1121. Personal jurisdiction was lacking because the claim to enforce the arbitration award did not

27  "arise out of" or "relate to" the California contacts of the Indian Company under Ninth Circuit's "but for" test. *Id.* at 1123-1124.

28

**CARDICA'S OPPOSITION TO MOTION TO DISMISS**
**CASE NO. 07-CV-02687 (SBA)**

LA1 1114176v.1

**B.    This Court Possesses Specific Personal Jurisdiction Under Federal Circuit Law.**

Unable to disown the California contacts of Dr. Blatter, IVIT next tries to characterize this motion as turning solely on whether conception of a patent in California can support specific personal jurisdiction (and erroneously applying Ninth Circuit law). Mot. pp. 6-7; *see infra* at 7-8. IVIT, however, totally ignored its other California contacts that *in total* establish specific personal jurisdiction. IVIT's motion thus fails independently of the weight this Court gives to contacts relating to the conception of the '268 patent.

> **1.    Cardica has demonstrated a *prima facie* case that IVIT's activities were "purposefully directed" at California**

"Purposefully directed" focuses on activities directed at residents of a forum and activities that occurred within the forum. *Elecs. for Imaging*, 340 F.3d at 1350. While physical "presence" in a forum satisfies purposefully directed, contacts "accomplished through telephone and mail" also demonstrate that activities were purposefully directed at a forum. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361-62 (Fed. Cir. 2001) (exercising personal jurisdiction over New Jersey resident who had traveled to California only once for business).[8] Indeed, "it could scarcely be more clear that [a defendant] purposefully directed activities at residents of [a forum] within the meaning of the due process inquiry" where the defendant "initiated each of the contacts with" the forum "over a span of" several years. *Akro Corp.*, 45 F.3d at 1546 (reversing district court dismissal for lack of personal jurisdiction). For example, communicating with persons in California by phone and letter and sending "two representatives" to "California for the purpose of demonstrating the technology underlying what later issued" as a disputed patent makes out a prima *facie* case of "purposefully directed." *Elecs. for Imaging*, 340 F.3d at 1350-51.

Here, IVIT purposefully directed its activities against Cardica, a California resident, by initiating the interference proceeding before the USPTO against Cardica's '038 patent seeking to

---

[8]  In rejecting the notion that the individual defendant's activities were insufficient to establish jurisdiction because his business activities were mostly conducted from his home in New Jersey, the *Inamed* Court cites to *Quill Corp. v. North Dakota*, 504 U.S. 298, 119 L.Ed.2d 91, 112 S.Ct. 1904 (1992), which "explicitly rejected such rationale." *Inamed Corp.*, 249 F.3d at 1361.

**CARDICA'S OPPOSITION TO MOTION TO DISMISS
CASE NO. 07-CV-02687 (SBA)**

LA1 1114176v.1

1   invalidate that patent. Tiu Decl. Exs. Q and R. Also, during the prosecution of IVIT's '268 patent,

2   IVIT sought to have an interference declared against Cardica's '804 patent, to which the '712 patent

3   claims priority, but the USPTO did not act upon that request. Tiu Decl., Ex. S. The fact that these

4   activities occurred outside of California is immaterial because they were directed at and intended to

5   cause an effect on Cardica, a resident of California. *See Inamed Corp.*, 249 F.3d 1356, 1360; *Akro*

6   *Corp.*, 45 F.3d at 1546.

7          Moreover, the purposefully directed prong is also satisfied based on the facts surrounding the

8   purported conception and development of the '268 patent in California. Specifically, Dr. Blatter

9   purportedly conceived of and commenced diligence to reduce to practice the technology underlying

10  the '268 patent when he was in California. Tiu Decl., Ex. A. These contacts are centrally important

11  to this interference priority case, and the underlying facts and circumstances are closely intertwined

12  with the merits of the case. *See, e.g.*, *Brand*, 487 F.3d at 870 ("Priority of invention is awarded 'to

13  the first party to reduce an invention to practice unless the other party can show that it was first to

14  conceive of the invention and that it exercised reasonable diligence in later reducing that invention to

15  practice."); *Brown v. Barbacid*, 436 F.3d 1376, 1378 (Fed. Cir. 2006) ("The party that is first to

16  conceive the invention in interference, if last to reduce the invention to practice, is entitled to the

17  patent based on prior conception if, as first to conceive, he exercised reasonable diligence from a

18  time before the other party's conception date to his own reduction to practice date.")[9]

19         Further, the purported inventive acts were followed by a string of relevant California contacts

20  to further develop the technology of the "invention" that shows IVIT's close ties to California and

21  establish a *prima facie* case of purposefully directed:

22     • IVIT ███████████████ to California ████████████████████

23  ███████████████████████. *See supra* § III.C.3. The Federal Circuit

24  recently relied on this exact type of contact as grounds for reversing an order dismissing an action

---

[9] While IVIT characterizes the conception contact as "fortuitous," (Mtn. at 6) Dr. Blatter clearly intended to travel to California, and his voluntary physical presence in California purposefully availed himself of the benefits and protection of the laws of California.

LA1 1114176v.1

for lack of specific personal jurisdiction. *Elecs. for Imaging*, 340 F.3d at 1350-51 (███████████ ███████ in California supports personal jurisdiction in a declaratory judgment action of patent invalidity).

•    IVIT has undertaken considerable efforts to ████████████from persons in California to ████████████████████. IVIT wrote and phoned California-based businesses over several years in furtherance of such efforts. *See, e.g.*, Tiu Decl. Ex. C (Blatter Dep. 15:3-25, 16:24-17:19, 20:4-23, 21:17-22:20, 24:9-23, 31:3-24; *see supra* § IV.B.    IVIT "initiated each of the[se] contacts with" California "over a span of" several years so "it could scarcely be more clear that [IVIT] purposefully directed activities at" California. *Akro Corp.*, 45 F.3d at 1546 (concluding such contacts established personal jurisdiction).

•    In ████████████ and ████████ IVIT entered into ████████ ████████with California residents with terms of████████████respectively. Tiu Decl. Exs. K-N.    Such contracts represent "significant" and "continuing obligations" with California residents and thus also represent activities "purposefully directed" at California. *Elecs. for Imaging*, 340 F.3d at 1350..

•    IVIT ████████████████████with California choice-of-law clauses. Tiu Decl. Ex. G. Such clauses further support a finding of purposefully directed activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (choice-of-law provisions cannot be ignored in "considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes").

•    IVIT ████████████████to California on several occasions ████████nd ████████████es. Tiu Decl. Ex. C (Blatter Dep. 54:22-55:20). These███also demonstrate IVIT's "substantial" and "purposeful" connection to California. *Elecs. for Imaging*, 340 F.3d at 1350.

In sum, "[f]ar from being random, fortuitous, or attenuated, the totality of these contacts sufficiently make out [Cardica's] *prima facie* case that [IVIT], by engaging in significant activities

1  in California, purposefully directed [its] activities to California." *See Elecs. for Imaging*, 340 F.3d at

2  1350.

3      While IVIT may argue that it did not foresee this action arising out of those contacts, "there

4  is no requirement [under Federal Circuit law] that the non-resident be on notice that a specific type

5  of litigation might ensue." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 n.14

6  (Fed. Cir. 1994) (reversing dismissal for lack of personal jurisdiction). While IVIT also may argue

7  that its contacts with California were not aimed at Cardica, under Federal Circuit law, it is "clear that

8  the plaintiff need not be the forum resident toward whom *any*, much less all, of the defendant's

9  relevant activities were purposefully directed." *Akro Corp.*, 45 F.3d at 1547 (emphasis added).

10  Accordingly, the purposefully directed prong of the specific jurisdiction analysis is satisfied.

11      **2.    Cardica's claims "arise out of or relates to" IVIT's California contacts.**

12      The allegations in this case also "arise out of or relates to" IVIT's contacts with California.

13  The Federal Circuit, unlike the Ninth Circuit, considers it "significant that the constitutional catch-

14  phrase ['arise out of or relates to'] is disjunctive in nature, indicating added flexibility and signaling

15  a relaxation of the applicable standard from a pure 'arise out of' standard." *Inamed Corp.*, 249 F.3d

16  at 1362 citing *Akro Corp.*, 45 F.3d at 1547. A cause of action "arises out of or relates to" forum

17  contacts when the cause of action will involve "an inquiry into the factual circumstances

18  surrounding" the forum contact. *Inamed Corp.*, 249 F.3d at 1362; *see also*, *Viam Corp. v. Iowa*

19  *Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (marketing and sales of *patentee's*

20  products through licensee in forum, in conjunction with single letter asserting infringement, deemed

21  sufficiently related to a declaratory judgment action against the patentee for patent invalidity and

22  noninfringement).

23      Here, the allegations in Cardica's complaint either "arise out of" or, at a minimum, "relates

24  to" IVIT's contacts with California. Cardica's interference relates to a prior interference proceeding

25  that IVIT initiated and sought before the USPTO and arises out of and IVIT's assertion that the '268

26  patent was conceived in California, and the reduction to practice proceeded therefrom. *See Inamed*

27

28

1 | *Corp.*, 249 F.3d at 1362 (holding contacts arose out of and related to claims); *Brand*, 487 F.3d at

2 | 870; *Brown*, 436 F.3d at 1378.

3 |     In addition, IVIT's ██████████████████████████████████████ the

4 | ███████████' and ███████████████████████████████████████y, also "arise

5 | out of or relates to" Cardica's claims that the '268 patent includes interfering and invalid claims. *See*

6 | *Elecs. for Imaging*, 340 F.3d at 1350; Compl. ¶¶ 33-34. Such ████████████████████████████

7 | could reveal, for example, what IVIT understood the scope of its patent to be and thus the extent of

8 | patent interference. They could also reveal whether conception of the claims of the '268 patent were

9 | "complete" for purposes of establishing priority – i.e., whether "the idea [was] so clearly defined in

10 | the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice,

11 | without extensive research or experimentation." *Brand*, 487 F.3d at 869-70 & n.4 (internal

12 | quotations omitted). *See also, Elecs. for Imaging*, 340 F.3d at 1350 ("the visit of defendants'

13 | representatives to demonstrate the technology that formed the subject matter of the [patent-in-suit] ,

14 | and various communications … concerning the underlying technology … clearly arise out of or are

15 | related to the [invalidity] claim…").

16 |     **3.    Exercising jurisdiction over IVIT is "reasonable and fair" because IVIT**

17 |     **lacks a "compelling" case for declining jurisdiction.**

18 |     Because sufficient contacts exist for specific personal jurisdiction, IVIT bears the burden to

19 | present a "compelling case" for why this is a "rare situation" where the Court should refuse

20 | jurisdiction as constitutionally unreasonable. *Elecs. for Imaging*, 340 F.3d at 1350, 1354; *Akro*

21 | *Corp.*, 45 F.3d at 1549. IVIT, however, waived that issue by failing to present any argument or

22 | evidence on the point. "It has not shown, for example, that it would be inconvenient for it to litigate

23 | in [California] or that the forum state does not have a sufficient interest in resolving the dispute."

24 | *Genetic Implant Sys., Inc.*, 123 F.3d at 1459 (reversing dismissal for lack of personal jurisdiction

25 | where defendant failed to present such evidence). IVIT's bare assertion in a declaration that it has

26 | never had facilities, employees, sales, or advertising in California does not render jurisdiction

27 | constitutionally unreasonable. *See Deprenyl Animal Health, Inc.*, 297 F.3d at 1346, 1355-57

28 |

15

1  (rejecting "unreasonableness" argument where defendant did not own or operate facilities in the

2  forum, had no employees in the forum, and never sold or advertised products in the forum).

3      Even if IVIT had not waived the issue, it could not overcome its burden to prove

4  constitutional unreasonableness for the first time in its reply.    IVIT simply cannot prove

5  "inconvenience" that amounts to a due process violation.    IVIT ██████████████ to

6  California and has ████████████████████ in California.  *Beverly Hills Fan Co.*,

7  21 F.3d at 1569 (rejecting inconvenience argument when defendant was "not located that far from"

8  the plaintiff's preferred forum); *see also Deprenyl Animal Health, Inc.*, 297 F.3d at 1356

9  (characterizing burden of requiring Canadian defendant to litigate in United States as "relatively

10  minimal").    Any burden associated with litigating in California is mitigated by the fact that

11  depositions of IVIT employees based in Utah would occur in Utah.    At most, IVIT may argue that

12  another forum is more convenient for it, but that is not a constitutional basis to refuse to exercise

13  specific personal jurisdiction. *See Akro Corp.*, 45 F.3d at 1549.

14      California also possesses a substantial interest in this matter.  Cardica maintains its principal

15  place of business in California (Compl. ¶ 4), and California "has a manifest interest in providing its

16  residents with a convenient forum for redressing injuries inflicted by out-of-state residents."  *See*

17  *Akro Corp.*, 45 F.3d at 1549 (internal quotations omitted); *Beverly Hills Fan Co.*, 21 F.3d at 1568.

18  California's interest in this matter is heightened here because both parties claim their respective

19  patents were invented in California; IVIT has repeatedly sought to initiate interference proceedings

20  against a Cardica, a California entity; and IVIT has repeatedly ███████████████ d

21  ████████████████. Compl. ¶ 10; Blatter Decl. ¶¶ 4-5; Tiu Decl.

22  Ex. C (Blatter Dep. 16:24-17:5; 20:4-23, 21:17-22:20).    California "has definite and well-defined

23  interests in commerce and scientific development" occurring within its borders. *Viam Corp.*, 84

24  F.3d at 430 (reversing dismissal based on personal jurisdiction of a declaratory judgment action

25  against a patentee).

26      In short, IVIT has not – and cannot at this late date – meet its burden of establishing a

27  "compelling" case for this Court to reject personal jurisdiction as constitutionally unreasonable.

28

**C.    Dismissal Is Not An Appropriate Remedy**

If, despite the evidence, the Court determines that it lacks personal jurisdiction over IVIT, then the appropriate remedy is to transfer venue pursuant to 28 U.S.C. § 1406 rather than dismiss the case altogether. *Stewart v. Luedtke Eng'g Co.*, 2006 U.S. Dist. LEXIS 17130, *15-19 (N.D. Cal. Feb. 10, 2006) (Armstrong). This "Court is able to easily identify" at least two alternative venues that "would be appropriate and where Defendant would be amendable to service:" (1) Virginia, where the "IVIT patent was prosecuted and issued" (Mot. p. 8) or (2) Utah, where IVIT maintains its principal place of business. *See Stewart*, 2006 U.S. Dist. LEXIS 17130, *18.

## VI.    CONCLUSION

For the foregoing reasons, the Court has a *prima facie* basis to exercise specific personal jurisdiction over IVIT and thus should deny IVIT's motion to dismiss.

Dated:  December 31, 2007

Respectfully submitted,

**SIDLEY AUSTIN LLP**
Jeffrey M. Olson
Paul H. Meier
Samuel Tiu

By: _____
     Jeffrey M. Olson
     Attorneys for Plaintiff
     CARDICA, INC.

17

LA1 1114176v.1