# Exhibit 1

# Redacted, Non-confidential Version, of Exhibit C to the Declaration of Samuel N. Tiu in Support of Plaintiff Cardica, Inc.'s Opposition to Defendant IVIT's Motion to Dismiss for Lack of Personal Jurisdiction

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

CARDICA, INC., a Delaware
corporation,

             Plaintiff,

      v.                              Case No. C07-2687BZ

INTEGRATED VASCULAR
INTERVENTIONAL TECHNOLOGIES,          **CERTIFIED**
L.C., A Utah limited liability
Company,                              **COPY**

             Defendant.

---

ATTORNEYS' EYES ONLY

DEPOSITION OF DUANE BLATTER, M.D.

Thursday, December 6, 2007

12:26 p.m.

Location: Workman Nydegger
1000 Eagle Gate Tower, 60 East South Temple
Salt Lake City, Utah

Reported by:
Daren S. Bloxham
RPR No. 000335

JOB No. 77967

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 4

1                  P-R-O-C-E-E-D-I-N-G-S

2

3              DUANE BLATTER, M.D.,

4        having been first duly sworn to tell the

5        truth, was examined and testified as follows:

6

7                     EXAMINATION

8    BY MR. COMMONS:

9        Q.    Good morning, Dr. Blatter.

10       A.    Good morning.

11       Q.    I know we met before, but my name is

12   Sean Commons.   I'm an associate for the firm that

13   represents Cardica in this matter.

14       A.    Okay.

15       Q.    Before we start, just going to go over a

16   little bit of sort of the ground rules for a deposition.

17   I'm not sure if you've had your deposition taken before?

18       A.    I have.

19       Q.    How many times approximately?

20       A.    Perhaps one or two.

21       Q.    Okay.   When was the last time that you had

22   your deposition taken?

23       A.    I can't remember.

24       Q.    Was it in the last --

25       A.    Several years.

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 6

1    designate this attorneys eyes only pursuant to Local

2    Rule 2-2 as we've done with the documents until we get

3    our protective order issue worked out.

4              MR. COMMONS:  Agreed.

5              MR. VUKSINICK:   Thank you.

6         Q.   (By Mr. Commons) Dr. Blatter, when was IVIT,

7    L.C., formed?

8         A.   I believe September of 1998.

9         Q.   And is IVIT, L.C., a dba?  What's the --

10   what's the legal name of the entity?

11        A.   Oh.  Integrated Vascular Internventional

12   Technologies.

13        Q.   And who founded IVIT, L.C.?

14        A.   I did.

15        Q.   And anyone else?

16        A.   No.

17        Q.   What was the purpose for founding IVIT, L.C.?

18   What was your purpose for founding IVIT, L.C.?

19        A.   To pursue development of medical device

20   technologies.

21        Q.   Did anyone other than yourself own an

22   interest in IVIT, L.C., at the time it was formed?

23        A.   No.

24        Q.   Did you obtain any funding or financing to --

25   prior to the founding of IVIT, L.C.?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 7

1      A.   No.

2      Q.   So was it self-funded, then, by you?

3      A.   It was funded by me.

4      Q.   In 1998, did you assign any rights or

5   properties to IVIT, L.C.?

6      A.   No.

7      Q.   What assets did it have when it was first

8   formed?

9      A.   None.

10     Q.   When did IVIT, L.C., cease existing?

11          MR. VUKSINICK:  Objection, calls for a legal

12   conclusion.

13          THE WITNESS:  I'm not sure I understand what you

14   mean by "cease existing."

15     Q.   (By Mr. Commons) Does IVIT, L.C., currently

16   operate?

17     A.   In July of 2006, I believe, IVIT, L.C., was

18   merged into IVIT, Inc.

19     Q.   Between the time it was founded and when it

20   merged into IVIT, Inc., did IVIT, L.C., have any

21   employees?

22     A.   Yes.

23     Q.   Who were the employees of IVIT, L.C.?

24     A.   I may not be able to remember all their names.

25     Q.   That's okay.  Whatever one you can remember.

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 13



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 14



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 15



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 16



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                12/06/07
ATTORNEYS' EYES ONLY

Page 17



SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 20



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.
ATTORNEYS' EYES ONLY

12/06/07



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 22



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 24



SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.
ATTORNEYS' EYES ONLY

12/06/07

Page 31



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.
ATTORNEYS' EYES ONLY

12/06/07

Page 33



c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 42



SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                12/06/07
ATTORNEYS' EYES ONLY

Page 43



```
1
2
3
4
5
6
7
8
9
10          When you first founded IVIT, L.C., you were
11   the sole owner, correct?
12        A.   Correct.
13        Q.   And you had primary responsibility for the
14   day-to-day running of the business; is that correct?
15        A.   Yes.
16        Q.   And you were primarily responsible for
17   supervising any employees and consultants?
18
19
20
21
22
23
24
25
```

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

Page 44

1    Q.    You had primary decision making authority for

2    IVIT, L.C.; is that correct?

3    A.    Yes.

4    Q.    Was IVIT, L.C., engaged in litigation between

5    the time it was founded and when it was merged into

6    IVIT, Inc.?

7    A.    Maybe you could define "litigation."

8    Q.    Did anyone file a complaint in the state or

9    federal court?

10    A.    Against IVIT?  Between what time period?

11    Q.    The time it was founded until when it was

12    merged into IVIT, Inc.

13    A.    Not to my knowledge.

14    Q.    Has there been any administrative proceedings

15    against IVIT, L.C.?

16    A.    What's an administrative proceeding?

17    Q.    If a state or local agency filed -- asserted

18    some kind of complaint against IVIT, L.C., for any

19    number of matters?

20    A.    Not that I remember.

21

22

23

24

25

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 46

1     Q.    Were any of them residents of California?

2     A.    No, not that I'm aware of.  Not to my

3  knowledge.  In fact, no.

4     Q.    What was your position -- what did your

5  position become under IVIT, Inc.?

6     A.    President.

7     Q.    Did you still have operational

8  responsibilities for IVIT, Inc., as president?

9     A.    We're a small company.

10    Q.    Is that a yes?

11    A.    I shared operational responsibilities with

12  Mr. Richard Linder, and for a time with Mr. Paul

13  Zaleski, who was a consultant.  Mr. Linder and

14  Mr. Zaleski sometimes for periods have performed

15  day-to-day decision making in consultation.

16    Q.    Where do they reside?

17    A.    Mr. Linder is in Utah.  Mr. Zaleski is in

18  Washington, D.C.  He was a consultant for a company for

19  about six or eight months.

20    Q.    Are any of the officers of IVIT, Inc. -- have

21  any of the officers of IVIT, Inc., been California

22  residents?

23    A.    No.

24    Q.    Any of the employees?

25    A.    No.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 49



8    Q.    What was the purpose for forming IVIT, Inc.?

9    A.    To develop medical devices.

10   Q.    Do you have an understanding about why you

11   decided to merge IVIT, L.C., into IVIT, Inc.?

12   A.    Specifically that question?  It is my

13   understanding that investors prefer to invest in a

14   corporation rather than an L.C.

15   Q.    Did you prepare a prospectus for IVIT, Inc.?

16   A.    Yes.

17   Q.    Any other kind of offering documents in

18   connection with IVIT, Inc.?

19   A.    There was -- yeah, a private placement

20   document.

21   Q.    And who was that -- was that private placement

22   document shared with anybody in California?

23   A.    No.

24   Q.    Was any offering circular or any other type of

25   solicitation to invest in IVIT, Inc., circulated to

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 50

1    someone in California?

2        A.    No.

3        Q.    Did you reach out to any venture capital firms

4    in California to invest in IVIT, Inc.?

5        A.    No.  This was a very limited private placement

6    to individuals in the state of Utah, almost all friends

7    of existing investors.

8        Q.    Now, when we were talking about the founding

9    of IVIT, L.C., and a goal being the development of

10   medical devices, was one of them developing the subject

11   matter of the idea that you had in 1998 for an

12   anastomosis device?

13       A.    Yes.

14       Q.    And was that also true for IVIT, Inc.?

15       A.    Yes.

16       Q.    One of the purposes was to help develop that

17   product?

18       A.    Yes.

19       Q.    For both, was that the primary product that

20   was under development?

21       A.    The 268 patent contains technology that is

22   central to the products that we have developed, yes.

23   It's not the only part of the products that we've

24   developed.  Yeah.

25       Q.    Would it be fair to say for IVIT, L.C., and

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 51

1    IVIT, Inc., that that would be the technologies

2    underlying the 268 patent would be the primary products

3    under development?

4            A.    The primary products that we are developing do

5    include the technologies of 268, but they also include

6    other technologies as well.    Yeah.

7            Q.    When -- hold on one second.

8            When did you conceive the idea for the subject

9    matter of the 268 patent?

10           A.    I began thinking about those ideas related to

11   that subject matter during the year or two preceding

12   1998.

13           Q.    Can you explain that a little further in terms

14   of what ideas you were developing prior to 1998?

15           A.    No.    I didn't say I was developing.    The ideas

16   that coalesced into the technology of the 268 patent had

17   been ideas floating in my mind for a year or two prior

18   to 1998.

19           The first written document that contains any

20   of those ideas was notes jotted on a program for a

21   medical meeting in the end of February, first part of

22   March of 1998.

23           Q.    Was this a -- were you in San Francisco,

24   California?

25           A.    Yes.    This was the annual meeting of the

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 54

1   forming IVIT, L.C., to help develop the ideas you wrote

2   down in that --

3       A.   Yes.

4       Q.   -- conference?

5       A.   Yes.

6       Q.   Just make sure you give me a chance to finish

7   before you answer.

8            When IVIT, L.C., was first formed, how many

9   employees did it have?

10      A.   None.

11      Q.   You wouldn't count yourself as an employee?

12      A.   No.  I never took any compensation from the

13  company.

14      Q.   At the time it merged into IVIT, Inc., how

15  many employees did it have?

16      A.   One.

17      Q.   What was the most number of employees

18  IVIT, L.C., had?

19      A.   I think four at any one time, and they were

20  always part time.  No one was full time.  Others were

21  part time.

22

23

24

25

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

DUANE BLATTER, M.D.                    12/06/07
ATTORNEYS' EYES ONLY

Page 55

1      A.   I attended a conference called the MD&M, a
2   medical device conference that is held, as I understand
3   it, once a year but in three different places in the
4   country.  I've attended that conference one time, and it
5   was in southern California at the time.
6      Q.   Was that in 2007?
7      A.   No.  No.  I attended that conference earlier,
8   2002.  I can't remember when.  In 2007, two of my
9   employees of IVIT, Inc., attended that conference, the
10  MD&M conference, an annual national medical device
11  conference.
12     Q.   Other than --
13     A.   It's a trade show.  It's not -- it's not a
14  medical conference, it's more of just an industry trade
15  show.
16     Q.   Did you have a booth, did IVIT have a booth at
17  the trade show?
18     A.   No.  The employees went just to learn more
19  about medical device manufacturing, technologies in
20  general.
21     Q.   And when you went in 2002, approximately, to
22  the event, during that trip did you try to find any
23  investors for IVIT?
24     A.   No.  No.  It was visit a booth about laser
25  cutting, visit a booth about extrusion, visit --

c2e19c54-48c5-47eb-81aa-a7d61a6cc842

REPORTER'S CERTIFICATE

STATE OF UTAH )

COUNTY OF UTAH )

I, Daren S. Bloxham, a Notary Public and Certified Shorthand Reporter, Registered Professional Reporter, hereby certify:

THAT the foregoing proceedings were taken before me at the time and place set forth in the caption hereof; that the witness was placed under oath to tell the truth, the whole truth, and nothing but the truth; that the proceedings were taken down by me in shorthand and thereafter my notes were transcribed through computer-aided transcription; and the foregoing transcript constitutes a full, true, and accurate record of such testimony adduced and oral proceedings had, and of the whole thereof.

I have subscribed my name and affixed my seal on this 10th day of December, 2007.

_____
Notary Public

My Commission Expires
10/10/09



DAREN S. BLOXHAM
NOTARY PUBLIC • STATE of UTAH
1276 NORTH 1270 EAST
AM.FORK, UTAH 84003
COMM. EXPIRES 10-10-2009