BRENT P. LORIMER (USB No. A3731) (admitted pro hac vice)
blorimer@wnlaw.com
THOMAS R. VUKSINICK (USB No. A3341) (admitted pro hac vice)
tvuksinick@wnlaw.com
CHAD E. NYDEGGER (USB No. 9664) (to be admitted pro hac vice)
cnydegger@wnlaw.com
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800
Facsimile:  (801) 328-1707

ROBERT H. SLOSS
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street
San Francisco, CA  94101
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480 (fax)
RSloss@fbm.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARDICA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED VASCULAR INTERVENTIONAL TECHNOLOGIES, L.C., a Utah limited liability company,<br><br>Defendant. | Case No. C07-2687 SBA<br><br>Honorable Saundra Brown Armstrong<br><br>**REPLY TO PLAINTIFF CARDICA, INC.'S OPPOSITION TO DEFENDANT IVIT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FOR SPECIFIC PERSONAL JURISDICTION, FEDERAL CIRCUIT LAW REQUIRES THAT PLAINTIFF'S CLAIMS ARISE OUT OF OR ARE DIRECTLY RELATED TO DEFENDANT'S PURPOSEFUL CONTACT WITH THE FORUM ...... 3

III.    CARDICA'S ALLEGED CLAIMS ARE ALL CHALLENGES TO THE LEGAL SUFFICIENCY OF THE '268 PATENT ......................................................... 5

IV.     IVIT'S CONTACTS WITH CALIFORNIA DO NOT SATISFY THE NEXUS REQUIREMENT FOR SPECIFIC PERSONAL JURISDICTION ................................. 7

        A.    Conception in California Will Not Support the Required Nexus Because It Is Not an Activity Purposefully Directed at Residents of California ....................... 8

        B.    There Is No Evidence that Dr. Blatter or IVIT Did Anything to Develop or Reduce the Invention to Practice in California. ....................................... 9

        C.    The Remaining Forum Contacts Are Insufficient because They Do Not "Arise out of or Relate to" Cardica's Challenges to the Sufficiency of the '268 Patent ... 11

              1.    Cardica's alleged claims do not "arise out of or relate to" IVIT's contacts with potential investors residing in California ............................ 11

              2.    Cardica's alleged claims do not "arise out of or relate to" IVIT's agreements with consultants ................................................................. 14

              3.    The attendance of IVIT employees at a medical device trade shows in California is unrelated to IVIT's alleged claims. ................................... 14

              4.    The interference proceeding before the PTO is unrelated to Cardica's alleged claims because it involved patent claims different from those of the '268 patent. ................................................................. 14

V.      IF THE COURT CHOOSES TO TRANSFER RATHER THAN DISMISS, THE CASE SHOULD BE TRANSFERRED TO UTAH. ....................................... 15

VI.     CONCLUSION ............................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

*3D Systems, Inc. v. Aarotech Labs, Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998) ......................................................................... 3, 4

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ............................................................................................ 3, 8

*Deprenyl Animal Health v. The University of Toronto,*
    297 F.3d 1343 (Fed. Cir. 2002) ............................................................................. 3

*Ecolocham, Inc. v. Southern California Edison Co.,*
    227 F.3d 1361 (Fed. Cir. 2000) ........................................................................... 12

*Eli Lilly and Co. v. Barr Laboratories, Inc.,*
    251 F.3d 955 (Fed. Cir. 2001) ............................................................................... 7

*Hartog v. Jots, Inc.,*
    2004 U.S. Dist. LEXIS 24267 (N.D. Cal. Jan. 9, 2004) ........................................ 9

*HollyAnne Corp. v. TFT, Inc.,*
    199 F.3d 1304 (Fed. Cir. 1999) .......................................................................... 4, 5

*Hyatt v. Boone,*
    146 F.3d 1348 (Fed. Cir. 1998) ........................................................................... 12

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
    802 F.2d 1367 (Fed. Cir. 1986) ............................................................................. 6

*In re Wright,*
    999 F.2d 1557 (Fed. Cir. 1993) ............................................................................. 7

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001) .......................................................................... 4, 5

*Mahurkar v. C.R. Bard, Inc.,*
    79 F.3d 1572 (Fed. Cir. 1996) ........................................................................... 6, 12

*Medichem, S.A. v. Rolabo, S.L.,*
    353 F.3d 928 (Fed. Cir. 2003) ............................................................................... 5

*Minn. Mining & Mfg. Co. v. Eco Chem.,*
    7575 F.2d 1256 (Fed. Cir. 1985) ........................................................................... 8

*Newkirk v. Lulejian,*
    825 F.2d 1581 (Fed. Cir. 1987) ............................................................................. 6

*No Touch N. Am. V. Blue Coral, Inc.,*
    1997 U.S. Dist. LEXIS 16153 (C.D. Cal. May 30, 1997) ...................................... 8

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*
    806 F.2d 1565 (Fed. Cir. 1986) ............................................................................. 7

*Pandrol USA, LP v. Airboss Railway Prods., Inc.,*
    424 F.3d 1161 (Fed. Cir. 2005) ............................................................................. 7

*Rees v. Mosaic Techns., Inc.*
    742 F.2d 765 (3d Cir. 1984) ................................................................................... 9

*Rowe v. DROR,*
    112 F.3d 473, 479 (Fed. Cir. 1997) .................................................................. 6, 11

*Slip Track Systems, Inc. v. Metal-Lite, Inc.,*
    304 F.3d 1256 (Fed. Cir. 2002) ............................................................................. 5

*Solomon v. Kimberly Clark Corp.,*
    216 F.3d 1372 (Fed. Cir. 2000) ........................................................................... 11

*Stickle v. Harris,*
    196 Cal. App. 3d 575 (1987) ................................................................................. 9

*Transco Products v. Performance Contracting,*
    38 F.3d 551 (Fed. Cir. 1994) ............................................................................... 12

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.,*
    721 F.2d 1540 (Fed. Cir. 1983) ....................................................................... 7, 13

*Western Elec. Co. v. Piezo Technology, Inc.,*
    860 F.2d 428 (Fed. Cir. 1988) ............................................................................. 15

*Yasuko Kawai v. Metlesics,*
    480 F.2d 880 ........................................................................................................ 12

**RULES AND STATUTES**

35 U.S.C § 120 ........................................................................................................ 12

35 U.S.C. § 112 .............................................................. 2, 5, 7, 11, 13, 14, 15

35 U.S.C. § 135(b) ........................................................................................ 6, 11, 13

35 U.S.C. § 291 ......................................................................................................... 5

# I.    INTRODUCTION

By failing to argue in its opposition that IVIT is subject to general personal jurisdiction in California, Cardica has conceded, as it must, that IVIT lacks the "continuous and systematic general business contacts" necessary to establish general personal jurisdiction.  The parties agree that before the Court can assert specific personal jurisdiction over IVIT, Cardica must satisfy all three prongs of the test for specific personal jurisdiction.  The parties also agree that the test for specific personal jurisdiction requires a showing that (1) that the defendant has purposefully directed its activities at residents in the forum; (2) that the plaintiff's claim arises out of or relates to defendant's purposeful activities with the forum; and (3) that the assertion of personal jurisdiction be reasonable and fair.  IVIT's motion to dismiss is based solely on Cardica's failure to satisfy the second prong of the test for specific personal jurisdiction.  In other words, the Court lacks personal jurisdiction over IVIT because Cardica has not demonstrated the required nexus between the claims alleged by Cardica in this case and IVIT activities purposefully directed at residents of California.

The contacts of IVIT that Cardica relies upon as the basis for specific personal jurisdiction fall into three categories:  (1) non-purposeful contacts of another; (2) contacts for which there is no evidence; and (3) purposeful contacts that are unrelated to Cardica's claims against IVIT.  The non-purposeful contact is the inventor's mental act of conceiving of the inventions claimed in IVIT's '268 patent while in California for other purposes.  Conception occurred independently and regardless of the inventor's location; he did not go to California for purposes of inventing and nothing he saw or heard in California contributed to conception.  The conception of the invention was not purposefully directed at residents of California and cannot be used to satisfy the nexus requirement.

The contact for which there is no evidence is Cardica's allegation that efforts to reduce the inventions of the '268 patent to practice were made in California.  Cardica's allegation that IVIT began the diligent reduction to practice of its invention in California is based on flawed logic, not evidence.  From statements that conception occurred in California, and that conception occurred and diligence began "on or about" the same day, Cardica concludes that conception and the beginning of

reduction to practice must have occurred "on" the same day, and therefore, they must have occurred in the same place, California. The conclusion that conception and the beginning of diligence occurred "*on*" the same day does not follow from the statement that conception and the beginning of diligence occurred "*on or about*" the same day. If conception and the beginning of diligence did not occur on the same day, there is no basis for concluding that they occurred in the same place. Cardica's flawed logic is no substitute for the direct evidence showing that all efforts to develop and reduce the invention to practice occurred outside California.

All of IVIT's other contacts with California are unrelated to the claims alleged by Cardica because they have nothing to do with Cardica's challenges to the legal sufficiency of the '268 patent, *i.e.*, whether the parties' respective patents claim the same invention, which party has priority of invention and whether the requirements of § 112 have been satisfied. Specifically, IVIT's communications with investors and consultants and attendance at trade shows in California have no bearing on the legal sufficiency of the '268 patent. They occurred after the earliest patent application describing the inventions claimed in the '268 patent was filed; they are not prior art or evidence of conception or reduction to practice, or related to the prosecution of the '268 patent or the scope of its claims. The previous USPTO interference proceeding between Cardica and IVIT is also unrelated to Cardica's challenge to the legal sufficiency of the '268 patent. The reason is straightforward. Cardica's challenges to the legal sufficiency of the '268 patent are specific to the claims of the '268 patent. The claims of the '268 patent are different from the claims of the IVIT patent application that was the subject of the USPTO interference.

Cardica's arguments with respect to the other two prongs of the test for specific personal jurisdiction – purposefully directed activities and fairness – are irrelevant to IVIT's motion to dismiss. Because Cardica fails to satisfy the nexus requirement whether either of the other requirements is satisfied is irrelevant. The focus on the nexus requirement significantly narrows the relevant forum contacts and the way those contacts are treated. While IVIT's contacts with California in the aggregate are relevant to the other two prongs of the test for specific personal

jurisdiction, only specific, purposefully directed contacts having the required nexus to Cardica's alleged claims are relevant to whether the nexus requirement has been satisfied.

Finally, both the Ninth Circuit and the Federal Circuit require a nexus between activities of the defendant purposefully directed at the forum and the plaintiff's alleged claims. Regardless of which court's law is applied, the nexus required for specific personal jurisdiction is missing. This reply applies Supreme Court and Federal Circuit law because Cardica contends that the nexus requirement under Federal Circuit law is more lax than that of the Ninth Circuit.

## II. FOR SPECIFIC PERSONAL JURISDICTION, FEDERAL CIRCUIT LAW REQUIRES THAT PLAINTIFF'S CLAIMS ARISE OUT OF OR ARE DIRECTLY RELATED TO DEFENDANT'S PURPOSEFUL CONTACT WITH THE FORUM

The Federal Circuit's three prong test for establishing specific personal jurisdiction looks to: "whether (1) the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities in the forum; (3) whether the exercise of jurisdiction is reasonable and fair." *Deprenyl Animal Health v. The University of Toronto,* 297 F.3d 1343, 1351 (Fed. Cir. 2002).

Before specific personal jurisdiction can be asserted, the plaintiff's alleged claim must "arise out of or relate to" activities of the defendant "purposefully directed" at residents of the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Deprenyl Animal Health,* 297 F.3d at 1350 ("For specific jurisdiction, the 'minimum contacts' prong requires that the defendant 'has purposefully directed his activities at residents of the forum *and* that the litigation results from alleged injuries that arise out of or relate to these activities.") (emphasis added). The Federal Circuit likewise requires that the nexus between plaintiff's alleged claim and defendant's purposely directed forum related activities be *direct.* *3D Systems, Inc. v. Aarotech Labs, Inc.,* 160 F.3d 1373, 1378 (Fed. Cir. 1998) ("The second prong of the *Akro* test is whether the cause of action arises out of or *directly* relates to those [purposefully directed] activities.") (emphasis added).

To determine whether the claims plaintiff alleges relate to defendant's purposeful contacts with the forum, the Federal Circuit looks at the elements of plaintiff's alleged claims, and then

---

examines defendant's purposeful contacts with the forum to determine whether the purposeful contacts establish an element of those claims. *3D Systems, Inc.*, 160 F.3d at 1378. For example, in *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1378-79 (Fed. Cir. 1999), the plaintiff asserted a claim for patent infringement against the defendant in Nebraska. In analyzing the "arises out of or relates to" element of the three factor test, the Federal Circuit first noted that the test requires that plaintiff's infringement claims "arise out of or *directly* relate" to the defendant's forum related activities, and then, articulated the elements of a patent infringement claim, concluding that for specific personal jurisdiction to arise the defendant must have engaged in infringing activity in the forum. *HollyAnne Corp.*, 199 F.3d at 1308 (emphasis added).

> [Plaintiff's] cause of action is the alleged infringement of its patents. Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention." [Citation omitted.] Thus, for there to be specific personal jurisdiction over the [defendant] in Nebraska, [plaintiff] would have to allege that [defendant] did one of those listed activities in Nebraska.

*Id.* In *HollyAnne*, the defendant had offered to donate allegedly infringing products to persons in Nebraska. *Id.* The Federal Circuit held that the offer to donate allegedly infringing products to persons in the forum was not an offer for sale, and hence not infringing activity, and that the court therefore lacked specific personal jurisdiction. *Id.* at 1309.

In its opposition, Cardica articulates what it says is the standard for determining whether the nexus requirement has been satisfied. Quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed. Cir. 2001), Cardica argues that "[a] cause of action 'arises out of or relates to' forum contacts when the cause of action will involve 'an inquiry into the factual circumstances surrounding' the forum contacts." Opp., p. 14. *Inamed* did not adopt the standard suggested by Cardica as the basis for determining whether the nexus requirement has been satisfied, and Cardica's characterization of *Inamed* masks the direct and significant relationship between the defendant's forum contacts and the claim asserted by the plaintiff that supported the finding that the nexus requirement was satisfied.

When the language Cardica quotes from *Inamed* is placed in context it is plain that in concluding there was a nexus, the court found more than that the plaintiff's claim would involve an inquiry into plaintiff's forum related contacts. Indeed, in *Inamed* the court found the inquiry to be

1    both "necessary" and "central" to the plaintiff's alleged claim. *Inamed Corp.*, 249 F.3d at 1362. In

2    *Inamed*, the defendant's forum related activities fell squarely within the wrong alleged in plaintiff's

3    complaint. There the plaintiff alleged a claim for patent misuse. *Id.* The complaint alleged that the

4    defendant misused his patents by granting exclusive licenses under his patents to the plaintiff when

5    he did not in fact own all of the rights in the patents. *Id.* The forum-related conduct the Court relied

6    upon to establish a nexus between plaintiff's alleged claim and defendant's forum related conduct

7    was defendant's negotiation in the forum of one of the very license agreements upon which the

8    allegation of patent misuse was based. *Id.*

9         The court's analysis in the *Inamed* and *HollyAnne* cases is fundamentally the same. In

10   *HollyAnne*, the plaintiff alleged patent infringement and the court concluded the required nexus was

11   absent because there was no conduct in the forum that amounted to patent infringement. In *Inamed*

12   the plaintiff alleged patent misuse and the court found the required nexus based on forum related

13   conduct that if proven would constitute patent misuse.

14   **III.    CARDICA'S ALLEGED CLAIMS ARE ALL CHALLENGES TO THE LEGAL**

15   **SUFFICIENCY OF THE '268 PATENT**

16        Before a determination can be made as to whether Cardica's claims arise out of or directly

17   relate to IVIT's purposefully directed forum related activities, one must examine the claims alleged

18   by Cardica in its complaint. Cardica purports to allege claims for patent interference under 35

19   U.S.C. § 291 and for patent invalidity under 35 U.S.C. § 112 ("§ 112").

20        As to the interference claim, issued patents are interfering if they include claims claiming the

21   same or substantially the same subject matter. *Slip Track Systems, Inc. v. Metal-Lite, Inc.*, 304 F.3d

22   1256, 1263 (Fed. Cir. 2002). To determine whether patents contain interfering subject matter, the

23   claims of the respective patents are compared using a two way patentability analysis. *Medichem,*

24   *S.A. v. Rolabo, S.L.*, 353 F.3d 928, 932 (Fed. Cir. 2003). The claimed invention of party A is

25   presumed to be prior art vis-à-vis party B and vice versa. *Id.* The claimed invention of party B must

26   anticipate or render obvious the claimed invention of party B and the claimed invention of party B

27   must anticipate or render obvious the claimed invention of party A. *Id.* In applying the two way

28

1    patentability analysis the claims of the respective patents are interpreted in light of their respective

2    written descriptions.  *See, Rowe v. DROR*, 112 F.3d 473, 479, 480 (Fed. Cir. 1997).

3         If the patents claim the same invention, the court must decide which patent is entitled to

4    priority.  Priority of invention goes "to the first party to reduce an invention to practice unless the

5    other party can show that it was the first to conceive the invention and that it exercised reasonable

6    diligence in later reducing the invention to practice.  *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,

7    1577 (Fed. Cir. 1996).  Conception is the formation "in the mind of the inventor" of a definite and

8    permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.

9    *Id.*  Reduction to practice may be actual or constructive.  Actual reduction to practice is the point in

10   time at which the invention is sufficiently tested to demonstrate that it will work for its intended

11   purpose.  *Newkirk v. Lulejian*, 825 F.2d 1581, 1582 (Fed. Cir. 1987).  Constructive reduction to

12   practice occurs when a patent application for the claimed invention is filed.  *Hybritech Inc. v.*

13   *Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986).  The relevant period for

14   measuring reasonable diligence is from the period from just before the other party's conception until

15   the party's own actual or constructive reduction to practice.  *Mahurkar,* 79 F.3d at 1578.  Thus, the

16   inquiry into conception, reduction to practice and diligence ends once the patent application is filed.

17        With respect to its interference claim, Cardica also relies on 35 U.S.C. § 135(b).  Under 35

18   U.S.C. § 135(b) "[a] claim which is the same as, or for the same or substantially the same subject

19   matter as, a claim of an issued patent may  not be made in any application unless such a claim is

20   made prior to one year from the date on which the patent was granted."  Whether the claim in a

21   patent application was made within one year of the issued patent requires a comparison of the claims

22   of the application and the issued patent and a review of the application's prosecution history to

23   determine when the claim in the application was first made.  If the interference is between two

24   issued patents, the issue date of the first to issue of the interfering patents must be compared to issue

25   date of the second patent to issue and its prosecution history to determine if the interfering claims of

26   the second patent were made within a year after the first patent issued.

27

28

Generally, § 112 requires that the written description of a patent (a) support the patent's claims,[1] (b) enable one of reasonable skill in the art to make and use the claimed invention,[2] and (3) disclose the inventor's best modes of practicing the claimed invention.[3] 35 U.S.C. § 112. It also requires that the claims be sufficiently definite to apprise one reasonably skilled in the art of the scope of the invention.[4] *Id.* Any claim that fails to satisfy the requirements of § 112 is invalid. All of the invalidity defenses under § 112 relate to (1) the sufficiency of the written description viewed from the perspective of the claims or (2) the sufficiency of the claims in light of the written description. *Supra,* footnotes 1-4. Whether the written description, enablement, best mode and definiteness requirements are satisfied is determined from the perspective of one skilled in the art at the time that the application was filed. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1557 (Fed. Cir. 1983).

## IV.    IVIT'S CONTACTS WITH CALIFORNIA DO NOT SATISFY THE NEXUS REQUIREMENT FOR SPECIFIC PERSONAL JURISDICTION

To satisfy the nexus requirement, Cardica must show that its alleged claims arise out of or directly relate to activities of IVIT that are purposefully directed at residents in California. The activities Cardica relies upon do not establish the required nexus because they are not the activities of IVIT, are not activities purposefully directed at residents of California, or are activities not directly related to Cardica's challenges to the sufficiency of the '268 patent.

---

[1] To satisfy the written description requirement the written description of the patent must describe to a person of ordinary skill in the art that, as of the filing date the inventor was in possession of the invention. *Pandrol USA, LP v. Airboss Railway Prods., Inc.,* 424 F.3d 1161, 1165 (Fed. Cir. 2005).

[2] To satisfy the enablement requirement of § 112 the written description of the patent must teach those skilled in the art how to make and use the claimed invention without undue experimentation. *In re Wright,* 999 F.2d 1557, 1561 (Fed. Cir. 1993).

[3] There is a two pronged test for best mode compliance: (1) the fact-finder must determine whether, at the time the application was filed, the invention possessed a best mode of practicing the invention and (2) if the inventor possessed the best mode, the fact-finder must determine whether the specification disclosed the best mode such that one reasonably skilled in the art could practice it. *Eli Lilly and Co. v. Barr Laboratories, Inc.,* 251 F.3d 955, 963 (Fed. Cir. 2001).

[4] The test for definiteness is whether one skilled in the art would understand all the language in the claims when they are read in light of the specification, as they must be. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576 (Fed. Cir. 1986).

---

**REPLY TO CARDICA'S OPPOSITION**
Case No. C07-2687 SBA                                                7

1      **A.    Conception in California Will Not Support the Required Nexus Because It Is Not**

2           **an Activity Purposefully Directed at Residents of California.**

3           Dr. Blatter's mental act of conceiving of the invention while in California does not satisfy the

4      nexus requirement of the second prong of the test for personal jurisdiction for two reasons.  First, the

5      contact was fortuitous, rather than purposeful, and therefore cannot satisfy the nexus requirement.

6      Second, Dr. Blatter's contact with California is not the contact of IVIT, and therefore cannot be

7      relied upon as a basis for subjecting IVIT to personal jurisdiction in California.

8           Dr. Blatter was in California at the time he conceived the invention, but his presence in

9      California had nothing to do with conception.  The thoughts and thought process that led to

10     conception of the invention were not activities directed at residents of California.  Dr. Blatter was in

11     California for purposes of fulfilling his continuing professional education requirement, not for

12     purposes of inventing.  There is no evidence that while in California he saw or heard anything that

13     contributed to his conception of the invention.  In conceiving of his invention, Dr. Blatter did not

14     avail himself of the privilege of conducting business in California or the benefits of any California

15     law.  That Dr. Blatter happened to be in California when he conceived the invention is a "random,

16     fortuitous or attenuated contact" that will not support personal jurisdiction.  *See, Burger King Corp.*

17     *v. Radzewcz,* 471 U.S. 462, 474 (1985).  Significantly, Cardica's opposition makes no attempt to

18     respond to IVIT's arguments that the mental activity associated with Dr. Blatter having conceived of

19     the invention in California was fortuitous, rather than purposeful.

20          Moreover, Dr. Blatter's conception of the invention while in California is not attributable to

21     IVIT for purposes of personal jurisdiction because IVIT did not exist, and its existence was not

22     within Dr. Blatter's contemplation at the time.  This is not a situation, like those present in the cases

23     cited by Cardica, where there was a post litigation transfer of corporate assets to a successor who

24     was aware of pending litigation,[5] or where the person with the forum related contacts was, at the

25     time, acting on behalf of a business entity that was not yet formed, but whose formation was then

26

27          [5] *Minn. Mining & Mfg. Co. v. Eco Chem.*, 7575 F.2d 1256 (Fed. Cir. 1985); *No Touch N. Am. V. Blue Coral, Inc.,* 1997 U.S. Dist. LEXIS 16153 (C.D. Cal. May 30, 1997)

28

1    contemplated,[6] or where a corporation merged with another corporation and assumed its liabilities,[7]

2    or where the business entity accepted the benefits of a preincorporation contract.[8]

3            Cardica's deposition of Dr. Blatter produced no evidence that at the time of conception

4    Dr. Blatter was contemplating forming or acting in contemplation of forming IVIT L.C. or IVIT Inc.,

5    or some other business entity yet to be created, or that when IVIT L.C. or IVIT Inc. were created

6    they assumed any of Dr. Blatter's liabilities.  If at some point it becomes necessary to rely on Dr.

7    Blatter's conception of the invention, IVIT will not be accepting the benefit of any California law or

8    any activity directed at any California resident.  Because Dr. Blatter's presence in California made

9    no contribution to the conception of the invention, IVIT can rely on his conception without

10   benefiting in any way from Dr. Blatter's presence in California.

11          **B.**    **There Is No Evidence that Dr. Blatter or IVIT Did Anything to Develop or**

12              **Reduce the Invention to Practice in California.**

13           Another of the contacts Cardica relies on as the basis for personal jurisdiction is the assertion

14   that IVIT "commenced its 'diligence' to reduce the invention to practice when Dr. Blatter was in

15   California."  Opp., p. 1.  Throughout its opposition Cardica asserts that diligence and development

16   relating to the '268 patent occurred in California.  Opp., pp. 2, 4, 5, 8, 12, 14.  Cardica took the

17   deposition of Dr. Blatter and received the documents it requested relating to his contacts with

18   California, but neither the deposition nor the documents yielded any testimony or contemporaneous

19   document to support Cardica's assertion that diligence began in California.  Indeed, the evidence

20   directly addressing reduction to practice and development of the technology of the '268 patent firmly

21   establishes that all such efforts were undertaken outside of California.  Blatter Decl., p. 2, ¶6.

22           Cardica's assertion that IVIT began to reduce the invention to practice in California, and that

23   development therefore occurred in California, is based on flawed logic, not evidence.  As support for

24   the allegation that IVIT began to diligently reduce the invention to practice in California, Cardica

25         [6] *Rees v. Mosaic Techns., Inc.* 742 F.2d 765 (3d Cir. 1984)

26         [7] *Hartog v. Jots, Inc.*, 2004 U.S. Dist. LEXIS 24267 (N.D. Cal. Jan. 9, 2004)

27         [8] *Stickle v. Harris*, 196 Cal. App. 3d 575 (1987)

28

1   relies on priority statements filed in connection with the previous USPTO interference between the

2   parties and involving patent claims that are different from those of the '268 patent. Opp., pp. 2, 4, 5,

3   12. Cardica relies, in part, on IVIT's statement in the original priority statement that IVIT "intends

4   to prove a date of earliest corroborated actual reduction to practice of on or about July 1, 1998 in San

5   Francisco, California." Opp., p. 5; Tiu Decl., Exh. A, p. 1. Cardica knows that statement was made

6   in error. Within two days after the original priority statement was filed, IVIT filed a corrected

7   priority statement which changed the place of actual reduction to practice to Salt Lake City, Utah,

8   expressly noting that the purpose of the corrected filing was to correct the actual location of the

9   reduction to practice. Tiu Decl., Exh. B, p. 1.

10          Cardica argues that because conception and diligence began on the same day, and conception

11  occurred in California, diligence must have begun in California. Opp., pp. 2, 4, 5. As the basis for

12  its argument Cardica again relies on statements made in IVIT's priority statements. *Id.* IVIT's

13  priority statements do not say that conception and the beginning of diligence occurred on the same

14  day or that diligence began in California. Tiu Decl., Exh. A, p. 1; Exh. B, p. 1.

15          With respect to conception the priority statements say that IVIT "intends to prove a date of

16  earliest corroborated conception of *on or about March 2,* 1998, in San Francisco, California." *Id.*

17  With respect to beginning of diligence the priority statements say that IVIT "intends to prove

18  diligence beginning *on or about March 2, 1998.*" *Id.* Apparently, Cardica concludes that because

19  conception occurred "*on or about March 2, 1998*" and diligence began "*on or about March 2,*

20  *1998,*" that conception occurred and the diligence began on the same day, and therefore, that

21  diligence began in California where conception occurred. The flaw in Cardica's logic is obvious.

22  That two events occurred "*on or about*" the same day does not mean that they occurred "*on*" the

23  same day. The use of "*on or about*" to qualify the date when conception occurred and diligence

24  began shows only that there is some uncertainty about the exact dates of those events. Conception

25  could have occurred sometime before March 2, 1998 and diligence could have begun sometime after

26  March 2, 1998, and both would still have occurred "*on or about March 2, 1998.*" Cardica's flawed

27  logic and improper inferences cannot withstand the direct evidence showing that the development

28

1   and reduction of the invention to practice occurred entirely outside of California.  Blatter Decl., p. 2,

2   ¶6.

3           C.      **The Remaining Forum Contacts Are Insufficient because They Do Not "Arise**

4                   **out of or Relate to" Cardica's Challenges to the Sufficiency of the '268 Patent.**

5                   1.      **Cardica's alleged claims do not "arise out of or relate to" IVIT's contacts**

6                           **with potential investors residing in California.**

7           Cardica argues that the nexus required to establish specific personal jurisdiction is satisfied

8   by IVIT's disclosure and demonstration of technology relating to the '268 patent to potential

9   investors in California.  The required nexus is not satisfied because communications relating to the

10  technology of the '268 patent are not directly related to Cardica's claims.  All of Cardica's alleged

11  claims go to the legal sufficiency of the '268 patent, *i.e.,* whether the '268 patent is interfering and

12  whether the claims of the '268 patent are patentable under § 112.  IVIT's communications and

13  demonstrations of technology disclosed in the '268 patent are related to the commercialization of

14  technology of the '268 patent, not the legal sufficiency of the '268 patent.

15          Cardica's interference claim encompasses the issues of same invention, priority of invention

16  and § 135(b).  The determination of whether the parties are claiming the same invention is made by

17  comparing the claims of the '268 patent to the claims of Cardica.  IVIT's communications with

18  potential investors about the technology of the '268 patent are irrelevant to that comparison.

19  Cardica, nevertheless, speculates that IVIT's communications with potential investors "could

20  reveal . . . what IVIT understood the scope of its patent to be and thus the extent of the patent

21  interference."  Opp., p. 15.  IVIT's belief as to the scope of the invention claimed is not relevant to

22  the interference.  The scope of the claims for purposes of determining whether the parties' respective

23  patents claim the same invention is determined by the language of the claims involved, interpreted in

24  light of the patents' respective written descriptions.  *See, Rowe*, 112 F.3d at 480.  Even in the context

25  of patent infringement, what the inventor believes as to the scope of his claims has no or almost no

26  relevance to the determination of claim scope.  *Solomon v. Kimberly Clark Corp.*, 216 F.3d 1372,

27  1379-80 (Fed. Cir. 2000).

28

1    IVIT's contacts with potential investors are not related to the priority issue because they

2    came too late to be relevant to the priority determination.  The latest possible priority date for the

3    '268 patent is April 16, 1999, the date when the patent application to which the '268 patent claims

4    priority was filed (the "priority application").[9]  *Ecolocham, Inc. v. Southern California Edison Co.*,

5    227 F.3d 1361, 1371 (Fed. Cir. 2000) ("[T]he date of the invention is presumed to be the filing date

6    of the patent application….").  The filing of the priority application was a constructive reduction to

7    practice of the inventions disclosed in the application and later claimed in the '268 patent, and

8    conception and reduction to practice was complete upon the filing of the priority application.

9    *Yasuko Kawai v. Metlesics*, 480 F.2d 880, 885 ("[T]he act of filing the United States application has

10   the legal effect of being, constructively at least, a simultaneous conception and reduction to practice

11   of the invention.").  Nothing else is required to establish a priority date of at least as early as April

12   16, 1999.  *Hyatt v. Boone,* 146 F.3d 1348, 1352 (Fed. Cir. 1998) (Once constructive reduction to

13   practice has occurred by filing of a patent application, "[t]there is no need for proof…of the subject

14   matter that is included in the application unless a date earlier than the filing date is sought to be

15   established.").  IVIT can establish an earlier priority date by evidence showing conception and actual

16   reduction to practice prior to April 16, 1999, but to do that requires evidence of activity *before* April

17   16, 1999.  *See, Mahurkar*, 79 F.3d at 1577.

18   IVIT's earliest contacts with potential investors in California occurred in late 2000, more

19   than a year after the April 1999 filing of the priority application for the '268 patent.  Opp., p. 6.

20   Such contacts are therefore irrelevant to the issue of priority or the sub-issues of conception and

21   reduction to practice.  Nothing that was said to potential investors in late 2000, *after* the priority

22   application was filed in April 1999, can push the priority date for the '268 patent to a date before

23   April 1999.  Contacts with investors in late 2000 are therefore not directly related (or even remotely)

24   related to Cardica's interference claim.

---

25   ⁹ The '268 patent is a continuation of two earlier patent applications.  Complaint (Dkt #1), Exh. A, '268 patent,

26   Related U.S. Application Dates.  As such, it has the same written description as the earlier patent applications and is
     entitled to priority date corresponding to the filing date of the earliest application.  *Transco Products v. Performance*

27   *Contracting*, 38 F.3d 551, 555 (Fed. Cir. 1994) ('"Continuation" and "divisional" applications are alike in that they are
     both continuing applications based on the same disclosure as an earlier application.'); 35 U.S.C § 120.

28

1    Cardica speculates that communications with potential investors could "reveal whether
2    conception of the claims of the '268 patent were [sic] 'complete' for purposes of establishing
3    priority – i.e., whether 'the idea [was] so clearly defined in the inventor's mind that only ordinary
4    skill could be necessary to reduce the invention to practice, without extensive research or
5    experimentation." Opp., p. 15. But as explained above, conception was complete when the priority
6    application was filed, so IVIT's subsequent communications with potential investors occurred too
7    late to have any bearing on conception.

8    IVIT's communications with potential investors in California bear no relationship to
9    Cardica's 35 U.S.C. § 135(b) ("§ 135(b)") defense. Resolution of Cardica's § 135(b) defense
10   requires a comparison of the date IVIT first proposed the allegedly interfering patent claims to the
11   USPTO and the date Cardica's patents issued, and nothing else.

12   Cardica does not specify which of the several possible defenses under § 112 it is asserting,
13   but it makes no difference for purposes of the personal jurisdiction issue. Whether the claims satisfy
14   the requirements of § 112 is determined from the claims and the written description of the patent as
15   viewed through the eyes of a person of ordinary skill in the art at the time the application on which
16   priority is based was filed. *W.L. Gore & Assoc., Inc.*, 721 F.2d at 1557; *supra*, p. 7, footnotes 1-4.
17   The written description for purposes of determining compliance with § 112 was fixed in April 1999
18   when the priority application for the '268 patent was filed. IVIT's contacts with potential investors
19   in California the next year were too late to have any relationship to Cardica's § 112 defenses. In
20   addition, regardless of which of the § 112 requirements is in issue, the central focus for purposes of
21   determining whether a patent satisfies the requirements of § 112 is the patent claims and written
22   description, not communications with potential inventors. Supra, footnotes 1-4.

23   Though IVIT has produced the power point presentations (totaling more than 110 pages)
24   made to both of the potential California investors with whom IVIT had substantive discussions,
25   Cardica has not identified anything in either power point presentation that is even relevant to the
26   issues of same invention, priority, complying with § 135(b) or complying with § 112, let alone

27
28

REPLY TO CARDICA'S OPPOSITION
Case No. C07-2687 SBA                    13

1   "necessary," "central" or "directly related" to those issues.  Finally, none of the communications

2   with potential investors were directed to Cardica.[10]

3       **2.    Cardica's alleged claims do not "arise out of or relate to" IVIT's**

4       **agreements with consultants.**

5   IVIT's communications with consultants in California and the entry into agreements with

6   them is unrelated to Cardica's alleged claims for all the same reasons IVIT's contacts with potential

7   investors are unrelated to Cardica's alleged claims.  Like the first contact with potential investors,

8   the first contact with consultants in California occurred in late 2000, more than a year after the

9   priority application for the '268 patent was filed.  Opp., p. 7.  Cardica does not contend that the

10  consultants played any role in the prosecution of the '268 patent or in defining the scope of its

11  claims.

12      **3.    The attendance of IVIT employees at a medical device trade shows in**

13      **California is unrelated to IVIT's alleged claims.**

14  IVIT personnel's attendance at trade shows for medical devices in California is also

15  unrelated to Cardica's claims for the same reasons as IVIT's contacts with potential investors are

16  unrelated to Cardica's claims.  IVIT's attendance at the trade shows has nothing to do with Cardica's

17  challenge to the legal sufficiency of the '268 patent's claims or even the technology of the '268

18  patent and occurred in 2002 and 2007, years after the priority application for the '268 patent was

19  filed.  Opp., p. 7.

20      **4.    The interference proceeding before the PTO is unrelated to Cardica's**

21      **alleged claims because it involved patent claims different from those of**

22      **the '268 patent.**

23  Cardica's challenge to the legal sufficiency of the claims of the '268 patent, whether as a

24  result of the alleged interference or the allegation that the '268 patent is invalid for failure to satisfy

25  the requirements of § 112 is controlled by the specification and claims of the '268 patent.  Whether

26  _____

    [10] None of the cases relied on by Cardica to support its allegation that a nexus exists are relevant because they
27  do not involve allegations of patent interference or whether the forum related contacts involved in those cases were
    related to § 112 defenses.

28  **REPLY TO CARDICA'S OPPOSITION**
    Case No. C07-2687 SBA                    14

1     the '268 patent claims the same invention as Cardica's patents, whether the inventions of the '268

2     patent were actually reduced to practice for purposes of determining priority, and whether the claims

3     and written description of the '268 patent satisfy the requirements of § 112 are all patent claim

4     specific, and their resolution necessarily depends on the specific language of the claims of the '268

5     patent.  The prior USPTO interference between Cardica and IVIT is not related to any of these issues

6     because the IVIT patent claims challenged in that proceeding are different than those of the '268

7     patent.  Compare the allegedly potentially interfering claims of the '268 patent identified in the

8     Complaint (Dkt #1), ¶¶ 22, 27, to the claims of IVIT's patent application involved in the USPTO

9     interference.  (Tiu Decl., Exh. S, pp. 2-4).

10     **V.  IF THE COURT CHOOSES TO TRANSFER RATHER THAN DISMISS, THE CASE**

11     **SHOULD BE TRANSFERRED TO UTAH.**

12     Cardica argues that in the absence of personal jurisdiction, rather than dismiss its complaint,

13     the court should transfer the case to Virginia or Utah, not expressing a preference for either.  The

14     question of whether there is personal jurisdiction in Virginia aside, the case, if transferred, should be

15     transferred to Utah, as the most convenient and economical forum.  While a party, witnesses, and

16     documents are located in Utah, there are no parties and no witnesses[11] in Virginia, and no documents

17     in Virginia that are not equally accessible to the parties in Utah and California.  California, where

18     Cardica resides, is closer to Utah than Virginia, and the cost of litigation in Utah will be less

19     expensive for both parties than the cost of litigating in Virginia, if for no other reason, because it will

20     require less traveling for both parties.

21     **VI.  CONCLUSION**

22     The court should dismiss Cardica's complaint for absence of personal jurisdiction, or in the

23     alternative, transfer this case to Utah.

24

25

26     [11] USPTO personnel cannot to be called to testify regarding their technical knowledge or mental processes in

27     reaching decisions relating to their activities as employees of the USPTO.  *Western Elec. Co. v. Piezo Technology, Inc.*, 860 F.2d 428, 431-33 (Fed. Cir. 1988).

28

---

**REPLY TO CARDICA'S OPPOSITION**
Case No. C07-2687 SBA         15

1    DATED this 22nd day of January, 2008.

2                              WORKMAN NYDEGGER

3

4                              By    /s/  Thomas R. Vuksinick
                                     BRENT P. LORIMER(blorimer@wnlaw.com)
5                                    THOMAS R. VUKSINICK (tvuksinick@wnlaw.com)
                                     CHAD E. NYDEGGER (cnydegger@wnlaw.com)
6                                    1000 Eagle Gate Tower
                                     60 East South Temple
7                                    Salt Lake City, UT  84111

8                                    FARELLA BRAUN & MARTEL LLP
                                     Robert H. Sloss
9                                    235 Montgomery Street
                                     San Francisco, CA  94101
10
                                     Attorneys for Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: _jolson@sidley.com_ and _stiu@sidley.com_; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Paul Howard Meier
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013

Executed on January 22, 2008, at Salt Lake City, Utah.

WORKMAN NYDEGGER


By  /s/  Thomas R. Vuksinick
BRENT P. LORIMER
THOMAS R. VUKSINICK
CHAD E. NYDEGGER

Attorneys for Defendant

J:\168901\013 Reply to Opposition (3) 012208.doc